## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **STEVE JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:11-0530** |
| | ) | |
| **FCI BECKLEY MEDICAL** | ) | |
| **EMPLOYEES,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following Motions: (1) The United States' "Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States" (Document No. 16), filed on April 24, 2012; (2) The United States' "Motion to Dismiss Medical Negligence Claims for Failure to State a Claim" (Document No. 18), filed on April 26, 2012; (3) Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 23), filed on May 8, 2012; (4) Defendants' "First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 28), filed on May 31, 2012; and (5) The United States' "First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States" (Document No. 30), filed on June 1, 2012. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' and Defendants' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the United States and Defendants in moving to dismiss. (Document Nos. 20, 22, 25, 32.) On May 21, 2012, and June 11, 2012, Plaintiff filed his Responses in Opposition. (Document Nos. 26 and 33.) The Defendants filed their Reply on June 15, 2012. (Document No. 35.) Having examined the record and

considered the applicable law, the undersigned has concluded that the United States' "First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States" (Document No. 30) should be granted, the United States' "Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States" (Document No. 16) should be denied as moot, the United States' "Motion to Dismiss Medical Negligence Claims for Failure to State a Claim" (Document No. 18) should be granted, Defendants' "First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 28) should be granted, and Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 23) should be denied as moot.

## **PROCEDURAL HISTORY**

On August 8, 2011, Plaintiff, acting *pro se*, filed his Complaint in this matter seeking relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No. 2.) Plaintiff names the following as Defendants: (1) FCI Beckley Medical Employees; (2) Mr. White, Nurse or Physicians Assistant; (3) Mrs. Lilly, Nurse; and (4) Mrs. Rose, Nurse. (<u>Id.</u>, p. 2.) Plaintiff alleges that Defendants acted with negligence and deliberate indifference by striking him with a battery powered vehicle and failing to stop to provide medical treatment for his injuries. (<u>Id.</u>, pp. 4 - 5.) Plaintiff explains that on August 25, 2009, he was "standing on the sidewalk in a common area of the compound at FCI Beckley when a battery powered vehicle driven

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

by Nurse White, who was accompanied by Nurse Lilly and Nurse Rose (passengers) on board this same vehicle," struck him in the upper left arm. (Id., p. 4.) Plaintiff states that he "tried to move from its path, but before I could react this vehicle ran me down and did not stop, and proceeded to its destination." (Id.) Plaintiff claims that "the actions of all three employees can only be concluded as extreme negligence and total disregard for my health and safety because they kept going and did not to my knowledge even return to the scene of the accident after injuring me." (Id.) Plaintiff states that [a]fter I was struck by this vehicle and no one came to my aid and assistance, I reported to FCI Beckley Medical Section to be seen and evaluated for treatment resulting from my injuries." (Id., p. 5.) Plaintiff acknowledges that "I was triaged, x-rayed, and examined by the staff in the medical section. I was given a sling to apply to my left arm to support it and I was prescribed a non-steroid anti-inflammatory medication, Ibuprofen 800 milligram dosage, three times a day." (Id.) Plaintiff complains that "[s]ince the accident, I suffer daily from lower back pain, pain and numbness in my neck, pain in my left shoulder, pain in my left arm, pain in my left leg, foot, and toes." (Id.) Plaintiff contends that the "numbness in my left upper and lower extremities is consistent with neurological or nerve damage." (Id.) Plaintiff claims that he requested an MRI to "find out the full extent of my injuries," but the request was denied by the BOP. (Id., p. 6.) Plaintiff asserts "[s]ince my re-designation and transfer to Beaumont FCI, I have been diagnosed with disc deterioration in my L5-S1 vertebrae, define as discogenic." (Id.) As relief, Plaintiff requests the Court to (1) "order the BOP to give me an MRI," and (2) "award punitive and pain and suffering damages in the amount of $500,000." (Id., p. 8.)

By Order entered on March 12, 2012, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and ordered the Clerk to issue a Summons requiring Defendants to answer or otherwise respond to Plaintiff's claim. (Document No. 9.) On April 25, 2012, the United

States filed a "Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States" and Memorandum of Law in Support. (Document Nos. 16 and 17.) The United States requests that the Court "dismiss Conley White, Janeen Rose and Frances Lilly from the common law tort claims and substitute the United State in their place and that the common law tort claims proceed against the United States as provided by law." (Document No. 16, p. 1.) In support of the Motion, the United States attaches a "Certification" by the United States Attorney. (Document No. 16-1.)

On April 26, 2012, the United States filed a "Motion to Dismiss Medical Negligence Claims for Failure to State a Claim" and Memorandum in Support. (Document Nos. 18 and 19.) The United States argues that Plaintiff failed to comply with the provisions of the West Virginia Medical Professional Liability Act [MPLA] concerning his claim that "the United States failed to render timely aid when he was injured and failed to order an MRI to determine the extent of his injuries." (Document No. 18, pp. 1 - 2.) As Exhibits, the United States files the following: (1) A copy of Plaintiff's Standard Form 95 and "Memorandum in Support of Tort Claim" stamped received on May 16, 2011 (Document No. 18-1, pp. 1 - 2.); (2) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated August 27, 2009 (Id., p. 8.); (3) A copy of Plaintiff's "Request for Administrative Remedy" stamped received on October 23, 2009 (Remedy No. 563086-F1) (Id., p. 9.); (4) A copy of Warden D. Berkebile's Response dated November 12, 2009, denying Plaintiff's "Request for Administrative Remedy" (Remedy No. 563086-F1) (Id., p. 10.); (5) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated December 6, 2009 (Remedy No. 563086) (Id., p. 11.); (6) A copy of Regional Director C. Eichenlaub's Response dated January 15, 2010, denying Plaintiff's "Regional Administrative Remedy Appeal" (Remedy No. 563086-R2) (Id., p. 12.); (7) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated June 22,

4

2010 (Remedy No. 563086-A2) (<u>Id.</u>, p. 13.); (8) A copy of Administrator Harrell Watts' Response dated December 28, 2010, denying Plaintiff's "Central Office Administrative Remedy Appeal" (Remedy No. 563086-A1); (9) A copy of an Affidavit by Inmate Taji Nodiar Wadkin (<u>Id.</u>, p. 15.); (10) A copy of an Affidavit by Inmate Montrell McSwain (<u>Id.</u>, p. 16.); (11) A copy of an Affidavit by Inmate Kelvine Rudolph (<u>Id.</u>, p. 17.); (12) A copy of an Affidavit by Inmate John Carrington-Bey (<u>Id.</u>, p. 18.); (13) A copy of an Affidavit by Inmate Curtis Johnson (<u>Id.</u>, p. 19.); (14) A copy of Plaintiff's pertinent medical records (<u>Id.</u>, pp. 20 - 24.); and (15) A copy of a letter from Debbie Stevens, Supervisory Attorney, dated June 30, 2011, denying Plaintiff's administrative claim (<u>Id.</u>, pp. 25 - 26.).

Notices pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), were issued to Plaintiff on April 26 and 27, 2012, advising him of the right to file a response to the United States' "Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States" (Document No. 16) and "Motion to Dismiss Medical Negligence Claims for Failure to State a Claim" (Document No. 18). (Document Nos. 20 and 22.) Also on April 26, 2012, the United States filed its Answer to Plaintiff's Complaint. (Document No. 21.)

On May 8, 2012, Defendants' filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support (Document Nos. 23 and 24.). Defendants argue that Plaintiff's <u>Biven</u>'s claim should be dismissed based on the following: (1) "Plaintiff has failed to exhaust his administrative remedies" (Document No. 24, pp. 5 - 11); (2) "Plaintiff's complaint fails to state a claim for relief" (<u>Id.</u>, pp. 11 - 17); and (3) "Defendants are entitled to qualified immunity" (<u>Id.</u>, pp. 17 - 18). In support, Defendants attach the following Exhibits: (1) The Declaration of Sarah Lilly (Document No. 23-1, pp. 1 - 2); (2) A copy of Plaintiff's relevant medical records (<u>Id.</u>, pp. 5 - 70); (3) A copy of Plaintiff Administrative Remedy History (<u>Id.</u>, p. 72 - 78); (4)

A copy of Remedy ID No. 563086 (Id., pp. 80 - 85); (5) The Declaration of Conley White (Document No. 23-2); (6) The Declaration of Janeen Rose (Document No. 23-3); and (7) The Declaration of Frances Lilly (Document No. 23-4).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 9, 2012, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 23). (Document No. 25.)

On May 21, 2012, Plaintiff filed his "Response in Opposition to the United States' Motion to Dismiss Medical Negligence Claims for Failure to State a Claim." (Document No. 26.) Plaintiff states that his "civil rights were violated and the Plaintiff was injured due to the reckless and negligent driving by Defendant Conley, who was the operator of the motorized medical cart that struck the Plaintiff." (Id., p. 1.) Plaintiff states that "this action is being brought pursuant to the United States Constitution (Bivens Action) . . . [and] [t]his claim is being misconstrued with medical negligence instead of the reckless and negligent actions that occurred while the Defendants were drivers and passengers of a vehicle which struck the plaintiff causing personal injury." (Id.) Plaintiff argues that  he is "claiming reckless and negligent behavior by the Defendants while driving caused his injuries, which has nothing to do with the 'standards of medical care' or 'medical malpractice.'" (Id., p. 2.) Plaintiff further argues that the medical department at FCI Beckley acted negligently by refusing "several requests by the Plaintiff for an MRI." (Id.) Plaintiff contends that he "is not required to comply with the screening certificate of merit required by the MPLA." (Id.) Plaintiff, therefore, argues that the United States' Motion to Dismiss should be denied. (Id.)

Also on May 21, 2012, Plaintiff filed his "First Amended Complaint." (Document No. 27.) Plaintiff continues to named the following as Defendants: (1) Conley White; (2) Janeen Rose; and (3) Frances Lilly. (Id., p. 2.) First, Plaintiff alleges that on or about August 25, 2009, he "was

personally injured due to the reckless and negligent driving of Nurse Conley White while the Plaintiff was a pedestrian who had the right of way as a pedestrian by law." (Id., p. 1.) Plaintiff further claims that Defendant White failed to "stop to render aid, but instead kept going after striking the Plaintiff with the battery powered medical cart." (Id.) Plaintiff complains that Defendants Rose and Lilly failed to instruct Defendant White "to stop, which makes them liable as accomplices to Nurse Conley White's negligent and reckless actions while driving." (Id.) Next, Plaintiff asserts that his constitutional rights were violated "because the Defendants were deliberately indifferent to Plaintiff's medical needs by refusing him an MRI or other radiological or neurological examinations that would disclose the full extent of the injuries." (Id., pp. 1 - 2.) Plaintiff states that "[s]ince I was injured by this accident, I suffer daily from lower back pain, pain and numbness in my neck, left shoulder, left arm, left leg, left foot and toe pain." (Id., p. 3.) Plaintiff states that he is "being prescribed several pain medications, namely neurontin and ibuprofen, which both in combination do little or nothing to relieve my daily pain and suffering." (Id., p. 4.) Plaintiff requests declaratory, injunctive, and monetary relief. (Id., pp. 4 - 5.)

On May 31, 2012, Defendants filed their "First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support (Document Nos. 28 and 29.) Defendants note that their Amended Motion is filed in response to Plaintiff's First Amended Complaint. (Id., p. 1, fn. 2.) Defendants argue that Plaintiff's Biven's claim should be dismissed based on the following: (1) "Plaintiff has failed to exhaust his administrative remedies for any deliberate indifference claims" (Document No. 29, pp. 5 - 11); (2) "Plaintiff's complaint fails to state a claim for relief" (Id., pp. 11 - 18); and (3) "Defendants are entitled to qualified immunity" (Id., pp. 18 - 19). In support, Defendants attach the same Exhibits as were attached to their original Motion to Motion Dismiss, or in the Alternative, Motion for Summary Judgment. (Document No. 28-1.)

7

On June 1, 2012, the United States filed its "First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States" and Memorandum in Support. (Document Nos. 30 and 31.) The United States requests that the Court "dismiss Conley White, Janeen Rose and Frances Lilly from the common law tort claims and substitute the United State in their place and that the common law tort claims proceed against the United States as provided by law." (Document No. 30, p. 2.) In support of the Motion, the United States attaches a "Certification" by the United States Attorney. (Document No. 30-1.)

Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 1, 2012, advising him of the right to file a response to Defendants' "First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 28) and the United States' "First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States" (Document No. 30). (Document No. 32.)

On June 11, 2012, Plaintiff filed his "Response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 33.) Plaintiff argues that "Defendants have misconstrued the Plaintiff's civil action that has been brought as a medical negligence claim, which is not what the Plaintiff is asserting." (<u>Id.</u>, p. 1.) Plaintiff states that he "was injured by the Defendant Conley White, who at the time of his reckless and negligent driving of a battery powered motor vehicle was accompanied by Janeen Rose and Frances Lilly." (<u>Id.</u>) Plaintiff explains that "personal injury to himself was inflicted by the Defendants, which makes them liable for their actions under local, state, county, West Virginia, and federal law." (<u>Id.</u>) Plaintiff claims that "a pedestrian always has the right of way." (<u>Id.</u>) Next, Plaintiff states that he disagrees with "the United States in their Motion to Dismiss the named FCI Beckley Medical Staff and substitute the United States in their place because as previously stated this is not a medical negligence claim, but instead a personal

injury claim and the plaintiff need not comply with the provisions of the West Virginia Medical Professional Liability Act." (Id., p. 2.) As Exhibits, Plaintiff attaches the following: (1) An Affidavit by Inmate Taji Nodiar Wadkin (Id., p. 4); (2) An Affidavit by Inmate Montrell McSwain (Id., p. 5); (3) An Affidavit by Inmate Kelvine Rudolph (Id., p. 6); (4) An Affidavit by Inmate John Carrington-Bey (Id., p. 7); and (5) An Affidavit by Inmate Curtis Johnson (Id., p. 18.).

On June 15, 2012, Defendants filed a Reply. (Document No. 35.) First, Defendants state that they "agree with Plaintiff that this is a personal injury action based on the alleged 'reckless and negligent driving' by Conley White." (Id., p. 1.) Second, Defendants "agree with Plaintiff that the personal injury claims based on the alleged negligent driving of Conley White should not be dismissed, but rather the United States should be substituted in place of Defendants and this negligence action proceed against the United States as provided by law." (Id.) Third, Defendants argue that "Plaintiff's Response fails to show any legal support of how his claim of reckless and negligent driving states a Bivens claim." (Id., p. 2.) Fourth, Defendants assert that "[t]o the extent that Plaintiff's Bivens claims remain viable after his response, Plaintiff has failed to offer any evidence that he has exhausted any administrative remedy (other than pursuant to the FTCA) for his claims of deliberate indifference and failure to render aid." (Id.) Finally, Defendants contend that "Plaintiff's Response fails to defeat Defendants' entitlement to qualified immunity for any Bivens claim." (Id.)

## FACTUAL HISTORY

Based upon a review of Plaintiff's medical records, Plaintiff reported to Health Services following the incident on August 25, 2009. (Document No. 28-1, pp. 66 - 67.) Specifically, Plaintiff stated that he was on his "way to work from Pine unit when he turned around after someone yelling 'watch out' and states he was hit in the arm by the medical cart." (Id.) Plaintiff was examined by Physician Assistant [PA] Hank Shrewsbury, who noted that Plaintiff had "full range of motion of left

9

shoulder and elbow." (<u>Id.</u>) PA Shrewsbury ordered an x-ray, which revealed no fracture. (<u>Id.</u>, pp. 66 and 70.) PA Shrewsbury noted that Plaintiff "will keep [arm] in sling today as inmate states this helps ease the pain." (<u>Id.</u>, p. 67.) Plaintiff was diagnosed with a contusion of the forearm, prescribed Ibuprofen, and instructed to follow-up if his symptoms worsened. (<u>Id.</u>)

On September 1, 2009, Plaintiff reported to sick call complaining that "he continues to have left elbow and shoulder pains with numbness." (<u>Id.</u>, p. 62.) Plaintiff was evaluated by PA Scotty Rose, who noted that Plaintiff had "equal strength in bilateral extremities." (<u>Id.</u>, p. 63.) PA Rose prescribed 800 mg Ibuprofen tablets and Capsaicin cream. (<u>Id.</u>, p. 64.) By Administrative Note entered on September 17, 2009, PA Rose noted that Plaintiff was a "no show" for his callout "regarding his injuries sustained by being hit by the medical cart." (<u>Id.</u>, p. 61.) On October 27, 2009, Plaintiff again reported to sick call complaining of "left shoulder and forearm pain," "numbness to his left pinky toe," and "increased lower back and neck pain since being ran over by the cart." (<u>Id.</u>, p. 58.) PA Rose evaluated Plaintiff noting that he "does have a history of chronic back pain that is subjective" and "his symptoms are out of proportion to his findings and x-rays in regards to his lower back." (<u>Id.</u>) Upon examination, PA Rose noted that Plaintiff continued to have a full range of motion of his "L-Spine and all extremities," "equal strength in his bilateral extremities," and "good sensation to light touch." (<u>Id.</u>, p. 59.) PA Rose ordered additional x-rays of Plaintiff's shoulder and spine. (<u>Id.</u>, p. 59.) The x-ray reports were normal. (<u>Id.</u>, pp. 68 - 69.) Plaintiff was instructed to follow-up as needed. (<u>Id.</u>, p. 59.)

By Administrative Note entered on December 11, 2009, PA Rose noted that Plaintiff was "scheduled to see Dr. Edwards today because the inmate wants an MRI. The inmate asked if we could reschedule it due to religious activities he wanted to participate in." (<u>Id.</u>, p. 57.) On December 18, 2009, Plaintiff reported to sick call complaining of pain in his neck, left arm, and left lower extremity.

(Id., p. 53.) Plaintiff admitted "to having pain in his back prior to arriving here, but complains the pain on his left side is a result of being hit with the medical cart." (Id.) Plaintiff requested an MRI "because he has numbness and tingling on his left side, but mainly on the tops of his 2nd through 5th toes." (Id.) On a scale to 10, Plaintiff rated his pain at 6 but stated the pain was not constant. (Id.) Dr. Edwards examined Plaintiff noting a full range of motion in the "L-Spine and all extremities," "equal strength in bilateral extremities," and "no neurological deficits." (Id., p. 54.) Dr. Edwards renewed Plaintiff's prescription for 800 mg Ibuprofen tablets and instructed Plaintiff to follow-up as needed. (Id., p. 55.)

On February 26, 2010, Plaintiff reported to sick call continuing to complain of "lower back, left upper extremity, and neck pain" and "numbness in his toes on his left foot." (Id., p. 47.) Plaintiff was examined by PA Rose, who noted that Plaintiff had a full range of motion in the "L and C-Spines," "equal strength in bilateral extremities," and "good sensation in all of his toes and left foot." (Id., p. 48.) PA Rose renewed Plaintiff's prescription for Ibuprofen and instructed him to follow-up as needed. (Id., p. 49.)

On March 19, 2010, Plaintiff was evaluated by Dr. Edwards during a Chronic Care Visit. (Id., p. 42.) Plaintiff reported that "he still has some back pain," but was "doing well." (Id.) Dr. Edwards noted that the "degeneration of cervical intervertebral disc" was improved. (Id., p. 43.) Plaintiff was instructed to follow-up as needed. (Id.) Plaintiff was again evaluated by Dr. Edwards during a Chronic Care Visit on April 1, 2010. (Id., p. 39.) Dr. Edwards renewed Plaintiff's prescription for Ibuprofen. (Id., p. 41.) By Administrative Note entered on April 19, 2010, PA Rose noted that Plaintiff was a "no show" for his sick call appointment regarding "his 'excruciating' lower back pains." (Id., p. 38.) On May 13, 2010, Plaintiff reported to sick call complaining of continued pain in his neck, left shoulder and lower back and "numbness in his left foot and toes." (Id., p. 34.) On a

11

scale to 10, Plaintiff rated his pain as an 8. (Id.) Plaintiff requested a back brace and shoe insoles. (Id.) Plaintiff was examined by PA Rose, who noted "[n]o changes in physical exam as far as range of motion, deformities, or strength . . . continues to have subjective pains." (Id., p. 35.) PA Rose renewed Plaintiff's prescription for Ibuprofen, issued a pair of gel insoles, advised Plaintiff that FCI Beckley does not issue back braces, and instructed Plaintiff to follow-up as needed. (Id., pp. 35 - 36.)

On May 25, 2010, Plaintiff was evaluated by PA Rose during a Chronic Care Visit. (Id., p. 28.) Plaintiff complained of chronic pain in his neck, back, and left shoulder. (Id.) Plaintiff, however, stated that the "Ibuprofen helps some days" and "he tolerates it well." (Id.) PA Rose examined Plaintiff noting "no changes from previous musculoskeletal exam" and "continues to have full range of motion of L Spine and C Spine with equal strength in bilateral extremities." (Id., p. 30.) PA Rose renewed Plaintiff's prescription for Ibuprofen and instructed Plaintiff to follow-up as needed. (Id., p. 31.) By Administrative Note entered on September 13, 2010, PA Rose noted that Plaintiff was a "no show" for the appointment regarding "impending pains he has throughout the left side of his body as a result of a recent accident." (Id., p. 27.)

On October 8, 2010, Plaintiff reported to sick call complaining of back pain. (Id., p. 25.) Specifically, Plaintiff stated that "I need an MRI or something because the whole left side of my body is messed up. If I can not have an MRI then can I see a chiropractor." (Id.) Plaintiff further complained that the Ibuprofen was not helping the pain. (Id.) PA Rose examined Plaintiff noting that his physical exam continued to be normal and informed Plaintiff that "he had no indication for an MRI." (Id., pp. 25 - 26.) Plaintiff "requested to see a physician," and PA Rose advised Plaintiff that he would schedule an appointment accordingly. (Id.) On October 22, 2010, Plaintiff reported to his appointment with Dr. Edwards regarding his request for an MRI. (Id., p. 22.) Plaintiff explained that he was requesting an MRI due to "left sided back pain, numbness, and tingling." (Id.) Dr. Edwards

12

examined Plaintiff noting "a normal musculoskeletal and neurological exam." (Id., p. 23.) Dr. Edwards prescribed Gabapentin 300 mg tablets to treat Plaintiff's lower back pain and instructed Plaintiff to follow-up as needed. (Id.)

On November 17, 2010, Plaintiff was evaluated by Dr. Edwards during a Chronic Care Visit. (Id., p. 17.) Plaintiff reported that "the Gabapentin is working." (Id.) Dr. Edwards renewed Plaintiff's prescription for Gabapentin and instructed Plaintiff to follow-up as needed. (Id., p. 19.) On February 28, 2011, Plaintiff was evaluated by PA Rose during a Chronic Care Visit. (Id., p. 7.) Plaintiff continued to complain of "pain in his neck, back, and whole left side." (Id.) Plaintiff, however, acknowledged that his medication "does help some." (Id.) PA Rose examined Plaintiff noting "full range of motion in L Spine and all extremities" and "equal strength in bilateral extremities." (Id., p. 9.) PA Rose renewed Plaintiff's prescription for Gabapentin and Ibuprofen. (Id., p. 10.) Plaintiff was transferred from FCI Beckley on March 24, 2011. (Id., p. 2.)

## **THE STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555,

13

127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## DISCUSSION

1.    **FTCA Claim:**

    **A.    The United States as a Party.**

In its Motion, the United States argues that Defendants White, Rose, and Lilly should be dismissed and the United States substituted as the Defendant as to all alleged tort claims. (Document No. 30.) In support, the United States Attorney filed a "Certification" stating that Defendants White, Rose, and Lilly were acting within the scope of their employment. (Document No. 30-1.) In Response, Plaintiff states that he "disagrees with the . . . United States in their Motion to Dismiss the named FCI Beckley Medical Staff and substitute the United States in their place because as previously stated this is not a medical negligence claim, but instead a personal injury claim and the Plaintiff need not comply with the provisions of the West Virginia Medical Professional Liability Act." (Document No. 33, p. 2.) The United States filed a Reply stating that Defendants "agree with Plaintiff that the personal injury claims based on the alleged negligent driving of Conley White should not be dismissed, but rather the United States should be substituted in place of Defendants and this negligence action proceed against the United States as provided by law." (Document No. 35, p. 1.)

The Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq.*, authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where

the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. The FTCA provides at 28 U.S.C. § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA. Carlson v. Green, 446 U.S. 14, 21 - 23, 100 S.Ct. 1468, 1472 -74, 64 L.Ed.2d 15 (1980). In order to maintain a case against the United States under the FTCA, Plaintiff must demonstrate that his action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the State in which the action accrued.

The United States attaches a "Certification" by the United States Attorney stating that "[o]n the basis of the information now available with respect to the allegations referred to therein, FCI Beckley Medical Employees Conley White, Janeen Rose and France Lilly, were acting within the scope of their employment as employees of the United States at the time of the incident out of which the claim arose."[2] (Document No. 30-1.) A United States Attorney's certification "is conclusive unless challenged." Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1153 (4th

---

[2] Title 28 U.S.C. § 2679(d)(1) provides as follows:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim is a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

Cir. 1997). "When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Id.; Also see Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997). In determining whether certification is proper, the Court reviews the question de novo. Gutierrez, 111 F.3d at 1154. The plaintiff must present "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." Id. at 1155. If the plaintiff presents evidence satisfying his burden of proof, the defendant may come forward with evidence in support of the certification. Id. The Court reviews the "certification, the pleadings, the affidavits, and any supporting documentary evidence" for issues of material fact. Id. "Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and evidentiary hearing." Id. In determining whether a federal employee was acting within the scope of his or her employment, the Court applies the law of the state where the conduct occurred. Id. at 1156(citing Jamison v. Wiley, 14 F.3d 222, 227 n. 2 (4th Cir. 1994).

Although Plaintiff disagrees that the United States should be substituted, he does not challenge the United States' "Certification."[3] (Document Nos. 26 and 33.) As stated above, a United States Attorney's certification "is conclusive unless challenged." The undersigned, therefore, recommends that the United States' "First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and France Lilly and Substitute the United States" (Document No. 30.) be granted as to Plaintiff's FTCA claim.

---

[3] Plaintiff appears to agree that Defendants were acting within the scope of their employment. In Response, Plaintiff contends he has stated a valid cause of action because Defendants were negligent. (Document Nos. 26 and 33.)

**B.      Failure to satisfy the requirements of the MPLA.**

Plaintiff alleges that federal employees at FCI Beckley acted with medical negligence in providing medical treatment. Specifically, Plaintiff alleges that Defendants failed to timely treat his injuries and order an MRI. In its Motion to Dismiss, the United States contends that Plaintiff's claim should be dismissed because he failed to timely and properly file a notice of claim and a screening certificate of merit pursuant to the MPLA. (Document No. 19.) In Response, Plaintiff argues that his claim should not be dismissed based upon the MPLA because "this action is being brought pursuant to the United States' constitution (Bivens action) Title 28 Section 1331 U.S. Code." (Document No. 26.)  Plaintiff explains that he "is claiming reckless and negligent behavior by the Defendants while driving caused his injuries which has nothing to do with the 'standards of medical care' or 'medical malpractice.'" (Id., p. 2.) Therefore, Plaintiff states that his "claim is being misconstrued with medical negligence." (Id., p. 1.) Although Plaintiff appears to argue that is he only pursuing his improper medical care claim pursuant Bivens, Plaintiff continues to argue that Defendants were negligent in failing to provide timely medical treatment and in failing to order an MRI. Accordingly, the undersigned will consider whether Plaintiff complied with the MPLA concerning his claim of medical negligence against Defendants.

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). As stated above, the FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Id.</u>

In the present case, Plaintiff alleges that Defendants' negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, <u>Roberts v. Gale</u>, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." <u>Farley v. Shook</u>, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection."

18

Id. at 858.

Unlike the facts in Johnson, Plaintiff's allegations of medical negligence are complex and expert testimony is necessary. See O'Neil v. United States, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience). In the instant case, it appears that the medical staff at FCI Beckley evaluated and provided treatment for injuries Plaintiff allegedly suffered after being hit by the medical cart. Plaintiff, however, contends that medical staff provided untimely and inadequate medical treatment, which resulted in "neurological or nerve damage." (Document No. 27, pp. 3 - 4.) Expert testimony is necessary to support any finding that the medical treatment provided by the staff at FCI Beckley fell below the applicable standard of care. The undersigned finds that the symptoms, methods of prevention, and proper treatment options for neurological or nerve damage, are not within the understanding of lay jurors by resort to common knowledge and experience. Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). The undersigned, therefore, recommends that the United States' "Motion to Dismiss Medical Negligence Claims for Failure to State a Claim" (Document No. 18) be granted.[4]

## 2.   Bivens Claim:

### A.   Exhaustion of Administrative Remedies.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may

---

[4]  The undersigned notes that Plaintiff's personal injury claim alleging that negligence by Defendants resulted in Plaintiff being struck and injured by the medical cart remains before the Court.

not afford them the relief they might obtain through civil proceedings.[5] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." <u>Massey v. Helman</u>, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. <u>Dale v. Lappin</u>, 376 F.3d 652, 656 (7th Cir. 2004); <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims

---

[5] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an

21

affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted))

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to

22

General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants acknowledge that Plaintiff exhausted his administrative remedies concerning his claim that a medical cart struck him and injured his left arm. (Document No. 29, p. 7.) Defendants, however, contend that Plaintiff did not fully exhaust his administrative remedies regarding "his claim that the Defendants failed to stop and render aid" and "his claim that he should have received an MRI." (Id.) In support, Defendants submit the Declaration of Ms. Sarah Lilly, a Legal Assistant for the Consolidated Legal Center at FCI Beckley. (Document No. 28-1.) Ms. Lilly states that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Ms. Lilly explains that she also has access to inmates' medical records. (Id.) Specifically, Ms. Lilly states as follows in her Declaration (Id., pp. 1 - 2.):

> 4.    A review of Plaintiff's administrative remedy history related to his current claims reveal he has exhausted only his claim that a medical cart struck him and injured his left arm. However, Plaintiff did not exhaust his claim that staff failed to stop and render aid, nor did he exhaust his claim that he should have received an MRI.

> 5.    On October 23, 2009, Plaintiff filed Administrative Remedy ID # 56086-F1.

Plaintiff specifically noted that the battery powered golf cart ran into him and injured his left arm. He noted that the accident was avoidable because staff could have driven in the grass. Plaintiff sought $5,000 dollars in compensation, a sentence reduction, his court fine to be dismissed, and a transfer to the North Central Region.

6.      The Warden denied the administrative claim. On December 8, 2009, Plaintiff filed an appeal to the Regional Office. The appeal was rejected as untimely on December 9, 2009, because the appeal was late. Plaintiff was instructed to resubmit the appeal with staff verification as to why the response was late.

7.      On December 28, 2009, Plaintiff resubmitted his appeal by filing Administrative Remedy ID # 563086-R2, in which he stated that the Warden's response was not accurate because Plaintiff went to the medical department on his own, did receive an injury and treatment, had the right-of-way as a pedestrian, and was having pain as a result of the injury.

8.      The Regional Office denied the appeal on January 15, 2010. Plaintiff attempted to appeal the denial on February 19, 2010, but the appeal was rejected on March 29, 2010, because Plaintiff did not submit a complete set of the request or appeal forms. He was given additional time to file the appeal.

9.      On June 29, 2010, Plaintiff resubmitted the appeal by filing Administrative Remedy ID # 563086-A2. In this appeal, Plaintiff noted that the staff did not remain alert and attentive, and the incident with the cart could have been avoided. He alleged that staff did not yell until it was too late for him to get out of the way. It is at this final level of appeal that Plaintiff first alleged that staff violated his rights when they did not return to render him aid.

10.     The appeal was denied on December 28, 2010.

11.     Plaintiff failed to allege any inappropriate medical care at any level of the administrative remedy process.

(Id., pp. 1 - 2.). Defendants, therefore, argue that "Plaintiff's Bivens claim regarding staffs' failure to render aid, as well as his allegation of inappropriate medical treatment, specifically the failure to order an MRI, must be dismissed." (Document No. 29, p. 11.)

In response, Plaintiff states that he "exhausted his administrative remedies at every level claiming the personal injury to himself that was inflicted by the Defendants, which makes them liable

24

for their actions under local, state, county, West Virginia, and federal laws." (Document No. 33, p. 1.)

Based on the foregoing, the undersigned finds that Plaintiff fully exhausted Administrative Remedies Number 563086. Thus, Plaintiff properly exhausted his claim that a medical cart struck him and injured his arm. Plaintiff, however, failed to exhaust his claim that (1) staff failed to stop and render aid, and (2) staff failed to conduct an MRI. The record is void of any evidence that Plaintiff filed an administrative remedy request concerning his need for an MRI. Although Plaintiff raised the issue of staff failing to stop and render aid in his "Central Office Administrative Remedy Appeal" (Remedy No. 563086-A2), this was the first time in the administrative process that Plaintiff raised the claim. (Document No. 28-1, pp. 80 - 84.) Claims are precluded if not raised at all three levels of the administrative remedy process.  Everett v. Francis, 2010 WL 1490479 (N.D.W.Va. April 13, 2010)(To exhaust a claim properly, it must be raised in all three steps), aff'd, 390 Fed.Appx. 266 (4th Cir. 2010); also see 28 C.F.R. § 542.15(b)(2)(an inmate may not raise in an appeal issues not raised in the lower level filings). Accordingly, Plaintiff's claims regarding staffs' failure to stop and render aid and failure to conduct an MRI should be dismissed for failure to exhaust.

**B.     Claims Against Individual Defendants:**

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal

25

agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed. 2d 171 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reingold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). <u>See also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), <u>quoting</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving

inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

To establish that a health care provider's actions constitute deliberate indifference to

27

a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. It is well established that a private physician under contract with a State to provide medical services to

inmates acts under color of State law when treating them and may therefore be held liable under Section 1983. See West v. Atkins, 487 U.S. 42, 54, 108 S.Ct. 2250, 2257, 101 L.Ed.2d 40 (1988); Conner v. Donnelly, 42 F.3d 220, 225 (4th Cir. 1994) ("If a physician treating a prisoner – whether by contract or referral – misuses his power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law.")

### *(i)    The Accident.*

Defendants argue that Plaintiff's Bivens claim that staff drove negligently and hit him with the medical cart should be dismissed. (Document No. 29, p. 12.) Defendants explain that "claims of negligence and recklessness are not cognizable under Bivens. (Id.) In response, Plaintiff states that "Defendant Conley White, who at the time of his reckless and negligent driving of a battery powered motor vehicle, was accompanied by Janeen Rose and Frances Lilly. This action by the Defendants caused personal injury to the Plaintiff." (Document No. 33, p. 1.) Plaintiff argues that "[a] pedestrian always has the right of way and although the Defendants' claim that they were on the way to a medical emergency at the time they injured the Plaintiff, this negligence on the part of the Defendants by striking him with this vehicle does not negate the fact that they should be held accountable for their actions." (Id., pp. 1 - 2.)

The allegations contained in Plaintiff's Complaint do not present a claim of constitutional magnitude. The undersigned finds that Plaintiff's general allegation that Defendants "negligently" hit him with the medical cart is insufficient to state a claim under the Eighth Amendment. It is well established that an assertion of mere negligent conduct is not enough to constitute an Eighth Amendment violation. See Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990). Furthermore, there is no allegation

that Defendants deliberately struck Plaintiff with the medical cart. According to Affidavits of Defendants White, Rose and Lilly, Defendants were "responding to a medical emergency involving an inmate in one of the housing units." (Document No. 28-1, pp. 86 - 91.) Defendants explain they were traveling at a low rate of speed and were "hollering and blowing the horn for inmates and staff to clear the way." (Id.) Plaintiff merely argues that the conduct by Defendants was neglect because "[a] pedestrian always has the right of way." Based on the foregoing, the undersigned recommends that Plaintiff's Bivens claim that Defendants struck him with the medical cart be dismissed.

### (ii)     *Inadequate Medical Care.*

Although Plaintiff did not fully exhaust his claim that Defendants improperly failed to render aid and order an MRI, the undersigned will briefly consider the merits of his claims. First, Plaintiff appears to argue that Defendants acted with deliberate indifference when they failed to stop and render aid after he was struck in the left arm by the medical cart on August 25, 2009. (Document No. 2.) Based upon a review of the record, it appears that Plaintiff received timely medical treatment even though Defendants did not stop to render aid. Plaintiff's medical records reveal that he received treatment in Health Services at 11:32 a.m. on August 25, 2009. According to Plaintiff and Inmate Wadkins, Plaintiff was struck by the medical cart between 11:00 and 11:30 a.m.[6] Defendants explain that they did not stop to render aid because Plaintiff was only "bumped" or "brushed" in the left arm and was not knocked down. (Document No. 28-1, pp. 86 - 91.) Plaintiff acknowledges that he was not knocked to the ground when he was struck by the medical cart. (Id., p. 53.) Defendants state that

---

[6] In his Complaint, Plaintiff alleges he was struck at approximately 11:00 a.m. (Document No. 2.) According to the Affidavit of Inmate Wadkins, Plaintiff was struck by the medical cart at "11:20 to 11:30" a.m. on August 25, 2009. (Document No.  33, p. 4.)

they were responding to a medical emergency that took priority over this incident and Plaintiff did not appear to need any assistance. (Id., pp. 87, 89, 91.) Plaintiff's medical records reveal that Plaintiff suffered a contusion of his left forearm, but no fracture. (Id., pp. 66 - 67, 70.) Thus, the Court finds that Plaintiff did not suffer an injury requiring immediate medical attention. (Id.) Accordingly, the undersigned concludes that the Defendants did not act with deliberate indifference by failing to stop and render aid.

Next, Plaintiff claims that medical staff acted with deliberate indifference when they refused to order an MRI. A review of Plaintiff's medical records reveal that medical staff evaluated Plaintiff and provided treatment following each sick-call request and chronic care visit. Medical staff consistently evaluated Plaintiff's condition, ordered x-rays, issued shoe insoles, and prescribed pain medications. Plaintiff was examined by Dr. Edwards and PA Rose numerous times with each examination revealing that Plaintiff had a full range of motion of his L-Spine and all extremities, equal strength in his bilateral extremities, and good sensation to light touch. Medical staff determined that an MRI was not warranted based upon Plaintiff's continuous, normal musculoskeletal and neurological examinations.[7] The record reveals that medical staff made sufficient efforts to treat Plaintiff's condition. Plaintiff merely disagrees with the medical staff's determination that an MRI was not warranted. An inmate's disagreement with his medical care for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v.

---

[7]  To the extent Plaintiff alleges medical staff violated his Eighth Amendment rights by negligently failing to order an MRI, his claim is without merit. It is well recognized that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." *Webb v. Hamidullah*, 281 Fed.Appx. 159, 166 (4th Cir. 2008); *also see Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.") The undersigned, therefore, finds that Defendants did not act with deliberate indifference in providing medical treatment for Plaintiff's condition and failing to order an MRI. Accordingly, the Court recommends that Defendants' "First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 28) be granted. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the United States' "First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States" (Document No. 30), **DENY as moot** the United States' "Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States" (Document No. 16), **GRANT** the United States' "Motion to Dismiss Medical Negligence Claims for Failure to State a Claim" (Document No. 18), **GRANT** Defendants' "First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 28), **DENY as moot** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 23), and **REFER** this matter back to the undersigned for further

32

proceedings regarding Plaintiff's FTCA claim.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

Date: January 11, 2013.

R. Clarke VanDervort
United States Magistrate Judge