IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

MR. STEVE JONES,

                Plaintiff,

v.                                    CIVIL ACTION NO.  5:11-cv-00530

F.C.I. BECKLEY MED. STAFF
EMPLOYEES, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Plaintiff's Complaint ("Compl.") (Document 2), the United States' Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States (Document 16), the United States Motion to Dismiss Medical Negligence Claims for Failure to State a Claim (Document 18), Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 23), Plaintiff's First Amended Complaint ("Amend. Compl.") (Document 27), Defendants' First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 28), the United States' First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States (Document 30), and attached exhibits, together with all written submissions in support and in opposition. By Standing Order (Document 4) entered August 8, 2011, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate

Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On January 11, 2013, the Magistrate Judge submitted his Proposed Findings and Recommendation ("PF&R") (Document 43), wherein he recommended that this Court: (1) grant the United States' First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States (Document 30); (2) deny as moot the United States' Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States (Document 16); (3) grant the United States' Motion to Dismiss Medical Negligence Claims for Failure to State a Claim (Document 18); and (4) grant the Defendants' First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 28); (5) deny as moot the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 23); and (6) refer this matter back to him for further proceedings regarding Plaintiff's FTCA claim.

On January 28, 2013, the Court granted in part and denied in part Plaintiff's Motion for Extension of Time to File Objections to Proposed Findings and Recommendation (Document 44) and ordered that Plaintiff file written objections by February 7, 2013. (Document 45.)

The Court did not receive objections by February 7, 2013.  On February 11, 2013, the Court entered its Memorandum Opinion and Order finding that neither party had timely filed objections, adopting the Magistrate's PF&R, and ordering that: (1) the United States' First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States (Document 30) be granted; (2) the United States' Motion to Dismiss

Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States (Document 16) be denied as moot; (3) the United States' Motion to Dismiss Medical Negligence Claims for Failure to State a Claim (Document 18) be granted; and (4) the Defendants' First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 28) be granted; (5) the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 23) be denied as moot; and (6) this matter be referred back to the Magistrate Judge for further proceedings regarding Plaintiff's FTCA claim. (Document 47.) However, on the dame date of February 11, 2013, the clerk's office received Plaintiff's objections to the PF&R. (Document 46.)

On February 25, 2013, Plaintiff filed "Objections and Traverse(s) to both Magistrates Report and Recommendations adopted Premature by United States District Judge Irene C. Berger" (Document 48). Plaintiff argues that because his objections were received by prison authorities before the deadline, under the prisoner mailbox rule, his objections were timely and the Court erred in issuing its Memorandum Opinion and Order. (*Id.* at 1-2.) Plaintiff argues that pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, the Court must rescind its Memorandum Opinion and Order as an error of law or fact and alter or amend judgment. (*Id.* at 3.) No response was filed.

Because there has not been a final judgment in this case, and Rule 59(e) of the Federal Rules of Civil Procedure applies only to final judgments, (*See Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1469 (4th Cir.1991)), the Court construes Plaintiff's

"Objections and Traverse(s)" as a motion under Rule 54(b).[1]   Pursuant to Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b); *see also Am. Canoe Assoc. v. Murphy Farms, Inc.,* 326 F.3d 505, 514–15 (4th Cir.2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted."). The power to reconsider or modify interlocutory rulings "is committed to the discretion of the district court." *Am. Canoe,* 326 F.3d at 515.

The Court finds that Plaintiff's motion under Rule 54(b) should be granted only to the extent that he seeks review of his objections because his objections are, in fact, timely. The envelope in which Plaintiff's objections were filed was date-stamped by the Beaumont Federal Correctional Institution on February 6, 2013. (Document 46 at 22.)   Under the "mailbox rule" of *Houston v. Lack*, 487 U.S. 266 (1988), a document is deemed filed by a prisoner when it is delivered to prison officials for mailing. (*Id.* at 276.)   Because Plaintiff's objections were processed by FCI Beaumont, the facility where he was confined at the time, on February 6, 2013, the day before the deadline for filing objections, the Court finds that his objections (Document 46) are timely. Therefore, the Court will vacate its previous Memorandum Opinion and Order (Document 47) and undertake a *de novo* review of those portions of the Magistrate's PF&R to

---

[1] The Court notes that following entry of the Court's February 11, 2013 Memorandum Opinion and Order (Document 47) adopting the Magistrate's PF&R, Defendants Conley White, Janeen Rose, and Frances Lilly moved for an order of judgment in their favor pursuant to Rule 54(b). (Document 49). However, on April 10, 2013, Defendants White, Rose, and Lilly filed a Notice of Withdrawal of their Motion for Judgment. (Document 54.) Therefore, on April 11, 2013, this Court ordered that their Motion for Judgment (Document 49) be terminated as moot.

which objection is made.  After thorough review and consideration, the Court finds, for the reasons stated herein, that Plaintiff's objections should be overruled.

## PROCEDURAL AND FACTUAL HISTORY

Magistrate Judge VanDervort's PF&R sets forth in detail the parties' motions. The Court now incorporates by reference those facts and procedural history.  To provide context for the ruling herein, the Court provides the following summary.

### A.  Procedural History

On August 8, 2011, Plaintiff, acting pro se, filed his Complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671, *et seq.,* and *Bivens v. Six Unknown Federal Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) against FCI Beckley Medical Employees, Mr. White (Nurse or Physician's Assistant), Mrs. Lilly (Nurse), and Mrs. Rose (Nurse) for negligently and recklessly running him down in a medical golf cart and fleeing the scene. (Compl. at 2, 6, 9.) Plaintiff alleges that on August 25, 2009, he was standing on the sidewalk at FCI Beckley when "a battery powered vehicle driven by Nurse White, who was accompanied by Nurse Lilly and Nurse Rose . . . struck [him] in [his] upper left arm." (*Id.* at 4.) Plaintiff asserts that "[t]he actions [of] all three employees can only be concluded as extreme negligence and total disregard for [his] health and safety because they kept going and did not to my knowledge even return to the scene of the accident after injuring [him]." (*Id.*) He further asserts that after the incident no one came to his aid and that he reported to FCI Beckley Medical Section to be treated. (*Id.* at 5.) He states that he was "triaged, ex-rayed and examined by the staff in the medical section [and] . . . was given a sling to apply to [his] left arm to support it and [was]

5

prescribed a non-steroid anti-inflammatory medication, ibuprofen 800 milligram dosage three times a day." (*Id.*) Plaintiff alleges that since the accident, he has suffered "daily from lower back pain, pain and numbness in [his] neck, pain in [his] left shoulder, pain in [his] left arm, pain in [his] left leg [/] foot and toes." (*Id.*) He contends that the "numbness in [his] left upper and lower extremities is consistent with neurological or nerve damage." (*Id.*) He further states that his request for an MRI, "to find out the full extent of [his] injuries," was denied by the Federal Bureau of Prisons ("BOP"). (*Id.* at 6.)  He contends that "[t]he denial of an MRI coupled with the fact that at the time of [his] injury [he] was run into by staff and then left at the scene should be regarded as cruel and unusual punishment and total indifference to [his] medical needs." (*Id.*)  Plaintiff requests that the Court order the BOP to "give [him] an MRI," grant him a jury trial, and award him damages in the amount of $500,000. (*Id.* at 8.)

On April 25, 2012, the United States filed a Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States (Document 16), attached exhibit, and memorandum in support (Document 17). Based on the attached United States Attorney's Certification (Document 16-1), the United States asserts that Defendants White, Rose and Lilly were acting within the scope of their office or employment at the time of the incident, and therefore, pursuant to the FTCA, Plaintiff's tort claim must proceed as an action against the United States. (Document 17 at 1-2.)

On April 26, 2012, the United States filed a Motion to Dismiss Medical Negligence Claims for Failure to State a Claim (Document 18), attached exhibits (Document 18-1), and memorandum

in support (Document 19).[2]   The United States argues that Plaintiff's medical negligence claims, with respect to the medical staff's failure to stop and render aid and failure to order an MRI, do not state a claim upon which relief can be granted due to Plaintiff's failure to comply with the provisions of the West Virginia Medical Professional Liability Act ("MPLA"). (Document 18 at 1-2.)

On May 8, 2012, Defendants filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 23), attached exhibits, and memorandum in support (Document 24).[3]   Defendants argue that Plaintiff's *Bivens* claims should be dismissed for three reasons. (Document 23 at 1-2.) First, they assert that Plaintiff has failed to exhaust his administrative remedies. (*Id.*)   Second, Defendants argue that his Complaint fails to state a claim for relief. (*Id.*)   Third, Defendants argue that they are entitled to qualified immunity. (*Id.*)

On May 21, 2012, Plaintiff filed his Response in Opposition to the United States' Motion to Dismiss (Document 26).   Plaintiff asserts that his claim is being misconstrued as medical

---

2 The United States' Exhibits include the following: (1) a copy of Plaintiff's Standard Form 95 and Memorandum in Support of Tort Claim stamped received on May 16, 2011 (Document 18-1 at 1-7); (2) A copy of Plaintiff's Request for Administrative Remedy Informal Resolution Form dated August 27, 2009 (*Id.* at 8); (3) A copy of Plaintiff's Request for Administrative Remedy stamped received on October 23, 2009 (Remedy No. 563086) (*Id.* at 9); (4) A copy of Warden D. Berkebile's Response dated November 12, 2009, denying Plaintiff's Request for Administrative Remedy (Remedy No. 563086-F) (*Id.* at 10); (5) A copy of Plaintiff's Regional Administrative Remedy Appeal dated December 6, 2009 (Remedy No. 563086) (*Id.* at 11); (6) a copy of Regional Director C Eichenlaub's Response dated January 15, 2010, denying Plaintiff's Regional Administrative Remedy Appeal (Remedy No. 563086-R2) (*Id.* at 12); (7) A copy of Plaintiff's Central Office Administrative Remedy Appeal dated June 22, 2010 (Remedy No. 563085-A2) (*Id.* at 13); (8) A copy of Administrative Harrell Watts' Response dated December 28, 2010, denying Plaintiff's Central Office Administrative Remedy Appeal (Remedy No. 563086-A1) (*Id.* at 14); (9) A copy of an Affidavit by Inmate Taji Nodiar Wadkin (*Id.* at 15); (10) A copy of an Affidavit by Inmate Montrell McSwain (*Id.* at 16); (11) A copy of an Affidavit by inmate Kelvin Rudolph (*Id.*at 17); (12) A copy of an Affidavit by inmate John Carrington-Bey (*Id.* at 18); (13) A copy of an Affidavit by inmate Curtis Johnson (*Id.* at 19); (14) A copy of Plaintiff's pertinent BOP medical records (*Id.* at 20-24); and (15) A copy of a letter from Debbie Stevens, Supervisory Attorney, dated June 30, 2011, denying Plaintiff's administrative claim. (*Id.* at 25-26.)

3 Defendants attach the following Exhibits: (1) the Declaration of Sarah Lilly (Document 23-1 at 1-3); (2) a copy of Plaintiff's relevant BOP medical records (*Id.* at 4-70); (3) a copy of Plaintiff's Administrative Remedy History (*Id.* at 72-78); (4) a copy of Plaintiff's Remedy No. 563086 (*Id.* at 80-85); (5) the Declaration of Conley White (Document 23-2); (6) the Declaration of Janeen Rose (Document 23-3); and (7) the Declaration of Frances Lilly (Document 23-4).

negligence. (*Id.* at 1.)   He states that this action is being brought pursuant to *Bivens* and asserts that his civil rights were violated when the Defendants recklessly and negligently struck him with the motorized medical cart causing him injury. (*Id.*)   Plaintiff then argues that he is not required to comply with the MPLA because he is claiming that the "wreckless [sic] and negligent behavior by the Defendants while driving caused his injuries which has nothing to do with the 'standards of medical care' or medical malpractice." (*Id.* at 2.)   However, Plaintiff does assert that medical staff at FCI Beckley was negligent and indifferent to his medical needs in denying several of his requests for an MRI. (*Id.*)   Plaintiff also argues that the Defendants are responsible for their actions, and, therefore, the United States should not be substituted for them. (*Id.*)

Also on May 21, 2012, Plaintiff filed his First Amended Complaint against the same defendants. (Document 27.)   Plaintiff again alleges that on or about August 25, 2009, he was standing on a sidewalk when a battery powered vehicle driven by Defendant White struck him causing him personal injury and did not stop to render him aid. (*Id.* at 1-2.) Plaintiff asserts that Defendant White, and the passengers, Defendants Lilly and Rose, acted recklessly and with total disregard to his health and safety. (*Id.* at 1-3.) Plaintiff also alleges that his civil rights were violated "because the Defendants were deliberately indifferent to [his] medical needs by refusing him an MRI or other radiological or neurological examination that would disclose the full extent of the injuries." (*Id.* at 1-2.) Plaintiff asserts that "[s]ince [he] was injured by this accident[,] [he] suffer[s] daily from lower back pain, pain and numbness in [his] neck, left shoulder, left arm, left leg, left foot and toes." (*Id.* at 3.) He contends that "[t]he numbness in his left upper and lower extremities is consistent with neurological or nerve damage." (*Id.* at 4.) He states that as a result he

has been prescribed several pain medications but that they "do little or nothing to relieve [his] daily pain and suffering." (*Id.*) Plaintiff seeks injunctive, declaratory, and monetary relief. (*Id.* at 4-5.)

On May 31, 2012, Defendants filed their First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, attached exhibits, and memorandum in support in response to Plaintiff's First Amended Complaint.[4] (Documents 28 and 29). Defendants again argue that Plaintiff's *Bivens* claim should be dismissed for the following reasons: "(1) Plaintiff has failed to exhaust his administrative remedies for any deliberate indifference claims; (2) Plaintiff's complaint fails to state a claim for relief; and (3) [they] are entitled to qualified immunity." (Document 28 at 1-2.)

On June 1, 2012, the United States filed its First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States (Document 30), attached exhibit (Document 30-1), and memorandum in support (Documents 31).  As in its original motion, the United States argues that based upon the attached certification by the United States Attorney (Document 30-1) that Defendants White, Rose and Lilly were acting within the scope of their employment at the time of the incident, pursuant to the FTCA, any tort claim must proceed as an action against the United States. (Document 31 at 1-3.)

On June 11, 2012, Plaintiff filed his Response to Defendants' Motion to Dismiss and attached exhibits.[5] (Document 33.) Plaintiff argues that the Defendants have misconstrued his civil action as a medical negligence claim. (*Id.* at 1.) Plaintiff asserts that he had the right of way

---

4 Defendants attach the same exhibits that were attached to their original Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Document 28-1). (*See infra* at 7.)
5 As exhibits, Plaintiff attaches the following: (1) An Affidavit by Inmate Taji Nodiar Wadkins (Document 33 at 4); (2) An Affidavit by Inmate Montrell McSwain (*Id.* at 5); (3) An Affidavit by Inmate Kelvine Rudolph (*Id.* at 6); (4) An Affidavit by Inmate John Carrington-Bey (*Id.* at 7) and (5) An Affidavit by Inmate Curtis Johnson. (*Id.* at 8.)

and was injured by Defendant White's reckless and negligent driving as he was allegedly on his way to a medical emergency with Defendants Rose and Lilly. (*Id.*) He contends that he "has exhausted his administrative remedies at every level claiming the personal injury to himself that was inflicted by the defendants which makes them liable for their actions under local, state, county, West Virginia, and Federal laws." (*Id.*)   Plaintiff disagrees that the United States should be substituted in Defendants' place because "this is not a medical negligence claim, but instead a personal injury claim and [he] need not comply with the provisions of the [MPLA]."

On June 15, 2012, Defendants filed their Reply (Document 35).  Defendants state that they "agree with Plaintiff that the personal injury claims based on the alleged negligent driving of Conley White should not be dismissed, but rather the United States should be substituted in place of Defendants." (*Id.* at 1.) Nevertheless, Defendants argue that Plaintiff's *Bivens* claim fails because he has not shown "how his claim of reckless and negligent driving states a *Bivens* claim." (*Id.*) Assuming arguendo that a *Bivens* claim remains, Defendants argue that Plaintiff has failed to offer any evidence that he has exhausted any administrative remedy for his claims of deliberate indifference and failure to render aid. (*Id.*)   Defendants also contend that because Plaintiff failed to defeat their entitlement to qualified immunity for any *Bivens* claim, their motion should be granted. (*Id.*)

### B.  Factual Background

On August 25, 2009, following the incident with the medical cart, Plaintiff reported to Health Services and was examined by Physician Assistant ("PA") Hank Shrewsbury. (Document 28-1 at 66-67.)   PA Shrewsbury ordered an x-ray that day, noted that there was no fracture, and

10

diagnosed Plaintiff with "[c]ontusion of forearm." (*Id.* at 67.)   On September 1, 2009, PA Scotty Rose evaluated Plaintiff when he reported to sick call complaining "that he continues to have left elbow and shoulder pains with numbness." (*Id.* at 62.) PA Rose noted that Plaintiff had "equal strength's in bilateral extremities" and prescribed him 800 mg Ibuprofen tablets and Capsaicin cream. (*Id.* at 63-64.)   On October 27, 2009, PA Rose again evaluated Plaintiff when he reported to sick call complaining of "left shoulder and forearm pain," "numbness to his left pinky toe," and "increased lower back and neck pain since being ran over by the [medical services] cart." (*Id.* at 58.) PA Rose noted that Plaintiff "continues to have full ROM [range of motion] of L-Spine and all extremities . . . equal strength's in bilateral extremities . . . [and] good sensation to light touch." (*Id.* at 59.) PA Rose also ordered additional x-rays of Plaintiff's shoulder and spine and found that they were normal. (*Id.* at 59, 68-69.)

On December 18, 2009, Dr. Edwards examined Plaintiff when he reported to sick call complaining of pain in his neck, left arm, and left lower extremity, and requested an MRI. (*Id.* at 53-54.) Dr. Edwards noted that Plaintiff "demonstrates full ROM of L-Spine and all extremities . . . has equal strengths in bilat [sic] extremities . . . [and] has no neurological deficits." (*Id.* at 54.) Dr. Edwards renewed Plaintiff's prescription of Ibuprofen and instructed him to follow up at sick call as needed and to return immediately if condition worsened. (*Id.* at 55.)

On February 26, 2010, PA Rose evaluated Plaintiff when he reported to sick call complaining of "lower back, upper extremity, and neck pain" and "numbness in his toes and his left foot." (*Id.* at 47.) PA Rose noted that Plaintiff had "[f]ull ROM of L and C-Spines. Equal strengths in bilat [sic] extremities" and "good sensation in all of his toes and left foot." (*Id.* at 48.)

11

PA Rose renewed Plaintiff's prescription for 800 mg Ibuprofen tablets and instructed him to follow-up as needed. (*Id.* at 49.)

On March 19 and April 1, 2010, Plaintiff was evaluated by Dr. Edwards during Chronic Care Visits where he reported that he is "doing well" but "still has some back pain." (*Id.* at 42.) Dr. Edwards instructed Plaintiff to follow-up as needed and renewed his prescription for Ibuprofen. (*Id.* at 41-44.)

On May 13, 2010, Plaintiff was evaluated by PA Rose when he reported to sick call complaining of "neck, left shoulder, and lower back pains" and "numbness in his left foot and toes." (*Id.* at 34.) PA Rose noted that there were "[n]o changes in physical exam as far as ROM, deformities, or strength goes [and that] [h]e continues to have subjective pains." (*Id.* at 35.) PA Rose renewed Plaintiff's prescription for Ibuprofen, issued a pair of gel insoles, and instructed him to follow-up as needed. (*Id.* at 35-36.)

On May 25, 2010, PA Rose evaluated Plaintiff during a Chronic Care Visit in which he complained of chronic pain in his neck, back, and left shoulder. (*Id.* at 28.) PA rose noted that there were "no changes from previous musculoskeletal exam" and that Plaintiff "continues to have full range of motion of L Spine and SC spine with equal strength in bilateral extremities." (*Id.* at 30.) PA Rose renewed Plaintiff's prescription for Ibuprofen, which Plaintiff said helps some days, and instructed him to follow-up as needed. (*Id.* at 28, 31.)

On October 8, 2010, PA Rose again examined Plaintiff when Plaintiff reported to sick call complaining of back pain and stating that the Ibuprofen was not helping. (*Id.* at 25.)   Plaintiff also stated that he needed an MRI. (*Id.*) PA Rose noted that his physical exam was normal and that

Plaintiff "had no indication for an MRI." (*Id.* at 25-26.)   On October 22, 2010, Dr. Edwards met with Plaintiff regarding his request for an MRI. (*Id.* at 22.)   Dr. Edwards examined Plaintiff noting "a normal musculoskeletal and neurological exam" and prescribed Plaintiff Gabapentin 300 mg tablets. (*Id.* at 23.)

On November 17, 2010, Dr. Edwards examined Plaintiff during a Chronic Care Visit. (*Id.* at 17.) Dr. Edwards renewed Plaintiff's prescription for Gabapentin, which Plaintiff reported was working, and instructed him to follow-up as needed. (*Id.* at 17-19.) On February 28, 2011, PA Rose examined Plaintiff during a Chronic Care Visit and noted that Plaintiff had "full range of motion in L-Spine and all extremities" and "equal strength in bilateral extremities." (*Id.* at 7-9.) PA Rose renewed Plaintiff's prescription for Gabapentin and Ibuprofen, which he reported "does help some." (*Id.* at 7, 9-10.) The Magistrate Judge noted that Plaintiff was transferred from FCI Beckley on March 24, 2011. (PF&R at 13) (citing Document 28-1 at 2.)

### *STANDARD OF REVIEW*

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).   When reviewing

portions of the PF&R *de novo,* the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction.   *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

### APPLICABLE LAW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570). In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." (*Id.*) (quoting *Twombly,* 550 U.S. at 557).

In reviewing a motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint," *Erikson v. Pardus*, 551 U.S. 89, 93 (2007), and "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999).  However, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

14

## DISCUSSION

### A.  The Magistrate's PF&R

First, the Magistrate Judge found that based on the United States' Certification that Defendants White, Rose and Lilly were acting within the scope of their employment at the time of the incident, the United States' First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States should be granted as to Plaintiff's FTCA claim. (PF&R at 13-16.)  Second, the Magistrate Judge found that Plaintiff was not excused from complying with the MPLA with regard to his claim of medical negligence, and therefore, recommended that the Court grant the United States' Motion to Dismiss Medical Negligence Claims for Failure to State a Claim. (*Id.* at 17-19.) Third, the Magistrate Judge found that Plaintiff did not exhaust his administrative remedies with respect to his claim that Defendants failed to stop and render him aid and his claim that staff failed to order an MRI. (*Id.* at 23-25.) Fourth, the Magistrate Judge found that Plaintiff has failed to assert a claim of "constitutional magnitude," and therefore, recommended that his *Bivens* claim that Defendants struck him with a medical cart be dismissed. (*Id.* at 28-30.)   Finally, the Magistrate Judge found that Defendants did not act with deliberate indifference in failing to stop and render Plaintiff aid and in failing to order an MRI. (*Id.* at 30-32.) Therefore, he recommended that the Court grant Defendant's First Amended Motion to Dismiss, or in the Alternative Motion for Summary Judgment.

### 1.  FTCA Claim

#### a.  The United States as the Proper Defendant

The Magistrate Judge found that the United States is the appropriate Defendant for

Plaintiff's FTCA claim based upon his review of the FTCA, relevant case law, and the United States' attached Exhibit. (PF&R at 14-16.)  The Magistrate Judge recognized that the FTCA authorizes a private person to recover monetary awards against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . if a private person, would be liable . . . in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1).[6]  The FTCA further provides that the United States Attorney General may certify that the federal employee was acting within the scope of his or her employment at the time of the incident giving rise to the claim. 28 U.S.C. § 2679(d)(1).  Upon such certification, "any civil action or proceeding commenced upon such a claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant." (*Id.*) The United States Attorneys are authorized to issue these certifications on behalf of the Attorney General. *Gutierrez de Martinez v. Drug Enforcement Admin.,* 111 F.3d 1148, 1152 (4th Cir.1997).

The Magistrate Judge's review of the record revealed that the United States attached such a "Certification" by the United States Attorney, R. Booth Goodwin II. (PF&R at 15) (citing

---

6  The FTCA provides in pertinent part that:

> The district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Document 30-1.)   The "Certification," made pursuant to 28 U.S.C. § 2679(d)(1), states that "(1) I have read the First Amended Complaint in this action; [and] (2) [o]n the basis of the information now available with respect to the allegations referred to therein, FCI Beckley Medical Employees Conley White, Janeen Rose and Frances Lilly, were acting within the scope of their employment as employees of the United States at the time of the incident out of which the claim arose." (*Id.*)

The Magistrate Judge found that although Plaintiff disagrees that the United States should be substituted in place of Defendants, he has not challenged the United States' "Certification." (PF&R at 16) (citing Documents 26 and 33.) The Magistrate Judge stressed that the certification "is conclusive unless challenged." *Martinez,* 111 F.3d at 1153.   When a certification is challenged, "it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence that the defendant federal employee was acting outside the scope of his employment." (*Id.*) Because Plaintiff has not challenged the United States' "Certification" and a certification "is conclusive unless challenged[,]" the Magistrate found that the United States' First Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States should be granted as to Plaintiff's FTCA claim. (PF&R at 16.)

### b.   Failure to Satisfy the Requirements of the MPLA

The Magistrate Judge noted that although Plaintiff repeatedly states that his "claim is being misconstrued with medical negligence" and appears to argue that he is only pursuing his improper medical claim pursuant to *Bivens,* he also argues that Defendants were negligent in failing to provide timely medical treatment and in failing to order an MRI. (PF&R at 17.) Therefore, the Magistrate Judge considered whether Plaintiff complied with the MPLA.

17

The Magistrate Judge recognized that "[t]he [FTCA] permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." (PF&R at 17-18) (quoting *Medina v. United States,* 259 F.3d 220, 223 (4th Cir.2001)).[7] As noted above, Plaintiff alleges that the Defendant's negligent acts occurred in the State of West Virginia. (PF&R at 18.) Therefore, in order for Plaintiff to maintain a case against the United State under the FTCA, the Magistrate Judge concluded that he must satisfy the necessary elements of a tort claim under West Virginia law, which, in cases such as this one involving medical negligence, is the MPLA. (*Id.* at 15-18.)

Under the MPLA, a screening certificate of merit is prerequisite to filing suit. W. Va.Code § 55–7B–6. However, the Magistrate Judge noted that a screening certificate of merit is not required in some instances. The MPLA provides that:

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

W. Va.Code § 55–7B–6(c).

The Magistrate Judge noted that under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert

---

7  The FTCA provides in relevant part:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674.

witnesses." (PF&R at 18) (quoting Sly Pt. 2, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (W.Va. 1964)). However, he recognized that expert testimony is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." (*Id.*) (quoting *Farley v. Shook,* 218 W.Va. 680, 629 S.E.2d 739 (W.Va. 2006)). For example, the Magistrate Judge noted that in *Johnson v. United States,* 394 F.Supp.2d 854, 858 (S.D.W.Va. May 4, 2005) (J, Chambers), the court found that a certificate of merit was unnecessary because plaintiffs' statement that the surgeon "implanted the too large [penile] Prosthetic backwards causing diminished bloodflow [sic] and subsequent Necrosis and infection" satisfied the requirements of West Virginia Code § 55–7B–6(c). (*Id.*) The court noted that Plaintiffs' claim was based upon a well-established legal theory of liability and no expert testimony was required to show a breach of the standard of care. (*Id.*) Therefore, the court allowed the claim to proceed without a certificate of merit. (*Id.*)

The Magistrate Judge found that unlike the facts in *Johnson,* Plaintiff's allegations of medical negligence are complex, and therefore, expert testimony is necessary. (PF&R at 18-19) (citing *O'Neil v. United States,* 2008 WL 906470 (S.D.W.Va.2008) (J. Johnston)). The Magistrate Judge noted that in the instant case, Plaintiff appears to argue that the medical staff provided untimely and inadequate medical treatment (i.e., by not ordering an MRI) which resulted in "neurological or nerve damage." (PF&R at 19) (quoting Document 27 at 3-4.) The Magistrate Judge found that "the symptoms, methods of prevention, and proper treatment options for neurological or nerve damage, are not within the understanding of lay jurors by resort to common

19

knowledge and experience." (*Id*.) Therefore, he concluded that "[e]xpert testimony is necessary to support any finding that the medical treatment provided by the staff at FCI Beckley fell below the applicable standard of care." (*Id*.) Because Plaintiff did not file a screening certificate of merit and was not excused from doing so, the Magistrate Judge recommended that the Court grant the United States' Motion to Dismiss Medical Negligence Claim for Failure to State a Claim. (*Id*.)[8]

### 2. *Bivens* Claim

#### a. *Exhaustion of Administrative Remedies*

The Magistrate Judge recognized that pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(a)(1996), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted." (PF&R at 19-20) (quoting 42 U.S.C. §1997(e)(a)). In other words, the PLRA requires that inmates exhaust available administrative remedies *prior* to filing civil actions. (*Id*.)[9] (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). The Magistrate Judge also noted that "there is no futility exception to the PLRA's exhaustion requirement." (PF&R at 20) (quoting *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir.1999)). However, he stressed that only *available* administrative remedies are required to be exhausted and that "[a] grievance procedure is not 'available' if prison officials prevent an inmate from using it." (*Id*.) (quoting *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir.2004); *Mitchell v. Horn*, 318 F.3d 523,

---

8 The Magistrate Judge noted that Plaintiff's personal injury claim alleging that Defendants' negligence resulted in him being struck and injured by a medical cart remains before the Court. (PF&R at 19 fn. 4).

9 The Magistrate Judge stressed that "the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court." (PF&R at 21.)

529 (3d Cir.2003); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001)). The Magistrate Judge

recognized that a plaintiff's failure to exhaust available administrative remedies is an affirmative

defense that prison officials have the burden of proving. (PF&R at 21) (citing *Dale v. Lappin,* 376

F.3d 652, 655 (7th Cir.2004)). He also noted that "[i]f an inmate exhausts his administrative

remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or

FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted

ones." (*Id.* at 20-21) (citing *Jones v. Bock,* 549 U.S. 199 (2007)).

    The Magistrate Judge found that "[f]or <u>Bivens</u> purposes, proper exhaustion of available

administrative remedies requires that 'a prisoner must submit inmate complaints and appeals in the

place, and at the time, the prison's administrative rules require.'" (PF&R at 22) (quoting *Lappin,*

376 F.3d at 655 (internal citation omitted)). He then outlined the BOP's grievance procedure, the

Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.,* through which an inmate can seek

formal review of issues relating to his confinement. (PF&R at 22-23.) The entire process takes

about 120 days to complete. (*Id.* at 23.) As a general matter, an inmate is required to first present

and attempt to resolve his complaint informally through an Inmate Request to Staff Member form

before submitting a Request for Administrative Remedy.[10] (*Id.* at 22) (citing 28 C.F.R. § 542.13.)

An Administrative Remedy Request must be completed on the appropriate form (BP–9) within

twenty calendar days of the date giving rise to the basis for the Request. (*Id.*) (citing 28 C.F.R. §

542.14(a)). The form must be submitted to the institutional staff member designated to receive

---

10  If the Inmate Request to Staff Member form is improper for some reason, it may be rejected. However, the inmate
will then be advised of the proper procedure. (PF&R at 22.)

such Requests or under exceptional circumstances to the appropriate regional Director.[11] (*Id.*) (citing 28 C.F.R. § 542.14(a), (c)(4), (d)). If an inmate directed his Request to the Warden and was not satisfied with his response, the inmate may submit an appeal on a BP–10 form to the appropriate Regional Director within twenty calendar days of the Warden's signed response. (*Id.*) (citing 28 C.F.R. § 542.15(a) and (b)). If the inmate is not satisfied with the Regional Director's response, he may then submit an appeal on a BP–11 form to the General Counsel within thirty days of the Regional Director's signed response.[12] (*Id.* at 22-23) (citing 28 C.F.R. § 542.15(a)). The Magistrate Judge noted that the administrative process is exhausted when the General Counsel issues his ruling.[13] (*Id.* at 23) (citing 28 C.F.R. § 542.15(a)).

The Magistrate Judge noted that Defendants acknowledge that Plaintiff exhausted his administrative remedies with respect to his claim that a medical cart struck him and injured his left arm, but not with respect to his claims that "defendants failed to stop and render aid" and that "he should have received an MRI." (PF&R at 23) (citing Document 29 at 7.) In support, Defendants attached the Declaration of Sarah Lilly, a legal assistant for the Consolidated Legal Center at FCI Beckley, who has access to SENTRY, the BOP's computer database containing information about

---

11  Once a Request is filed, the Warden or the Regional Director must respond within twenty or thirty calendar days, respectively. (PF&R at 22) (citing 28 C.F.R. § 542.18.)

12  The General Counsel has forty days to respond to an inmate's appeal. (PF&R at 23) (citing 28 C.F.R. § 542.18.)

13  The Magistrate Judge recognized that an inmate's Request or Appeal may be rejected at any level and returned to him without a response if the submission does not comply with the administrative remedies requirements. (PF&R at 23) (citing 28 C.F.R. § 542.17(a)). When a submission is rejected, the inmate will be provided with written notice explaining the reason for the rejection. (*Id.*) (citing 28 C.F.R. § 542.17(b)). If the reason for the rejection is correctable, the notice will provide the inmate with an opportunity to correct the defect and resubmit his Request for Appeal. (*Id.*) If a Request for Appeal is rejected and the inmate is not given an opportunity to correct the defect, he may appeal the rejection to the next level. (*Id.*) (citing 28 C.F.R. § 542.17(c)).

inmates' administrative remedy filings, and access to inmates' medical records. (*Id.*) (citing

Document 28-1.) In her Declaration, Ms. Lilly states:

> 4.   A review of Plaintiff's administrative remedy history related to his current claims reveals he has exhausted only his claim that a medical cart struck him and injured his left arm. However, Plaintiff did not exhaust his claim that staff failed to stop and render aid, nor did he exhaust his claim that he should have received an MRI.

> 5. On October 23, 2009, Plaintiff filed Administrative Remedy ID # 563086-F1. Plaintiff specifically noted that the battery powered golf cart ran into him and injured his left arm. He noted that the accident was avoidable because staff could have driven in the grass. Plaintiff sought $5,000 dollars in compensation, a sentence reduction, his court fine to be dismissed, and transfer to the North Central Region.

> 6. The Warden denied the administrative claim. On December 8, 2009, Plaintiff filed an appeal to the Regional Office. The appeal was rejected as untimely on December 9, 2009, because the appeal was late. Plaintiff was instructed to resubmit the appeal with staff verification as to why the response was late.

> 7. On December 28, 2009, Plaintiff resubmitted his appeal by filing Administrative Remedy ID # 563086-R2, in which he stated that the Warden's response was not accurate because Plaintiff went to the medical department on his own, did receive an injury and treatment, had the right-of-way as a pedestrian, and was having pain as a result of the injury.

> 8. The Regional Office denied the appeal on January 15, 2010. Plaintiff attempted to appeal the denial on February 19, 2010, but the appeal was rejected on March 29, 2010, because Plaintiff did not submit a complete set of the request or appeal forms. He was given additional time to file the appeal.

> 9. On June 29, 2010, Plaintiff resubmitted the appeal by filing Administrative Remedy ID # 563086-A2. In this appeal, Plaintiff noted that staff did not remain alert and attentive, and the incident with the cart could have been avoided. He alleged that staff did not yell until it was too late for him to get out of the way. It is at this final level of appeal that Plaintiff first alleged that staff violated his rights when they did not return to render him aid.

> 10. The appeal was denied on December 28, 2010.

> 11. Plaintiff failed to allege any inappropriate medical care at any level of the administrative remedy process.

(PF&R at 23-24) (quoting Document 28-1.)  Therefore, Defendants argue that Plaintiff's *Bivens* claims that staff failed to render him aid and failed to order him an MRI should be dismissed based on his failure to exhaust his available administrative remedies. (*Id.* at 24) (citing Document 29 at 11.) In response, Plaintiff argues that he "exhausted his administrative remedies at every level claiming the personal injury to himself was inflicted by the Defendants, which makes them liable." (*Id.* at 24-25) (quoting Document 33 at 1.)

The Magistrate Judge found that there is no evidence in the record that Plaintiff filed an administrative remedy request with respect to his need for an MRI. The Magistrate Judge also found that Plaintiff did not exhaust his administrative remedies with respect to his claim that staff failed to stop and render him aid because he did not raise this claim at all three levels of the administrative remedy process. (*Id.*) (citing Document 28-1 at 80-84); *Everett v. Francis,* 2010 WL 1490479 (N.D.W.Va. April 13, 2010) *aff'd* 390 F.App'x 226 (4th Cir.2010); 28 C.F.R. § 542.15(b)(2) ("An inmate may not raise in an Appeal issues not raised in the lower level filings."). Because Plaintiff raised the issue of Defendants failing to stop and render him aid for the first time in his Central Office Administrative Remedy Appeal, the Magistrate Judge found that he did not properly exhaust his administrative remedies. (PF&R at 25) (citing Document 28-1 at 80-84.) Based on the foregoing, he found that Plaintiff's claims regarding staff's failure to stop and render aid and failure to order an MRI should be dismissed for failure to exhaust administrative remedies. (*Id.*)

### b.   *Claim Against Individual Defendants*

The Magistrate Judge correctly set forth the applicable case law concerning *Bivens* actions. First, he noted that a *Bivens* action is a judicially created damages remedy which allows plaintiffs to seek money damages against federal officials acting under the color of law for injuries caused by their unconstitutional conduct. (PF&R at 26-27) (citing *Bivens v. Six Unknown Named Agnes of the Federal Bureau of Narcotics,* 403 U.S. 388, 395-97 (1971)). In order to maintain a *Bivens* claim, a plaintiff must show that the defendant, a person acting under the color of federal law, violated their constitutional right. (*Id.*) The Magistrate Judge noted that *Bivens* claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. (*Id.* at 26) (citing *FDIC v. Meyer,* 510 U.S. 471, 486 (1994); *Berger v. pierce,* 933 F.2d 393, 397 (6th Cir.1991); *Reingold v. Evers,* 187 F.3d 348, 355 fn. 7 (4th Cir.1999)). However, he also recognized that an inmate may bring a *Bivens* action against federal officer in their individual capacity if alleging an Eighth Amendment constitutional violation. (PF&R at 26) (citing *Wilson v. Seiter,* 501 U.S. 294 (1991)). Importantly, he found that under the Eighth Amendment, sentenced prisoners are guaranteed adequate medical care. (PF&R at 26-27) (citing *Wolfish v. Levi,* 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds, Bell v. Wolfish,* 441 U.S. 520 (1979)).

The Magistrate Judge then explained the elements an inmate must allege and prove in order to establish a violation of the Eighth Amendment with respect to a challenge of the conditions of confinement. (PF&R at 27). An inmate must allege and prove that he suffered a "sufficiently serious" deprivation and that prison officials acted with "deliberate indifference" to his health and safety." (*Id.*) (citing *Wilson v. Seiter,* 501 U.S. 294, 297-99 (1991.) The Fourth Circuit Court of

Appeals articulated the applicable standard in *Miltier v. Beorn,* 896 F.2d 848, 851-52 (4th Cir.1990):

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. (citation omitted). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. (citation omitted). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. (citation omitted). Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (citation omitted).

(PF&R at 27-28) (quoting *Miltier v. Beorn,* 896 F.2d 848, 851-52 (4th Cir.1990)). In other words, Plaintiff must first allege and eventually prove: (1) a "sufficiently serious" deprivation of adequate medical care and a resulting "serious or significant physical or mental injury" under an objective standard and (2) that each defendant acted with "deliberate indifference" to his health and safety (i.e., was conscious of the risk of harm to him) under a subjective standard. (*Id.*) (citing *Wilson v. Seiter,* 501 U.S. 294, 297-99 (1991); *Farmer v. Brennan,* 511 U.S. 825, 840 (1994)). The Magistrate Judge noted that a deprivation is "sufficiently serious" when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." (PF&R at 27) (quoting *Wilson v. Seiter,* 501 U.S. 294, 297-299 (1991) (citing *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). The Magistrate Judge found that "[a] medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain." (PF&R at 27.) The Magistrate Judge also found that Plaintiff must prove that each Defendant "knows of and disregards an excessive risk to inmate

26

health and safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (*Id.* at 28) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

### i. *The Accident*

Based on his review of the record, the Magistrate Judge found that Plaintiff's allegations that Defendants "negligently" hit him with a medical cart are insufficient to state a claim under the Eighth Amendment. (PF&R at 29.) The Magistrate Judge emphasized that mere negligent conduct does not rise to the level of an Eighth Amendment violation. (*Id.*) (citing *Daniels v. Williams,* 474 U.S. 327, 328 (1986); *Miltier v. Beorn,* 896 F.2d 848, 852 (4th Cir.1990)). The Magistrate Judge noted that Plaintiff does not allege that Defendants deliberately struck him with the medical cart. (PF&R at 30.) Rather, he argues that Defendants were negligent because "[a] pedestrian always has the right of way." (*Id.*) The Magistrate Judge also considered the Affidavits of Defendants White, Rose, and Lilly, in which they explain that they were "responding to a medical emergency involving an inmate in one of the housing units" and were "hollering and blowing the horn for inmates and staff to clear the way." (*Id.*) (quoting Document 28-1 at 86-91.) Because negligence is not enough to constitute an Eighth Amendment violation, the Magistrate recommended that the Court dismiss this *Bivens* claim.

### ii. *Inadequate Medical Care*

Based upon his review of the record, the Magistrate Judge found that Defendants did not act with deliberate indifference in failing to stop and render Plaintiff aid after he was struck in the

27

arm with a medical cart or in failing to order an MRI for him.[14] (PF&R at 30-32.) Defendants

explain that they were responding to a medical emergency when the medical cart "bumped" or

"brushed" Plaintiff in the arm. (*Id.*) (citing Document 28-1 at 86-91.) They state that they did not

stop to render Plaintiff aid because he did not appear to need any medical assistance (he was not

knocked to the ground) and the medical emergency to which they were responding took priority.

(PF&R at 30-31) (citing Document 28-1 at 86-91); (Document 38-1 at 53 (Plaintiff acknowledges

that he was not knocked down by the medical cart.)) The Magistrate Judge found that Plaintiff's

injury, a contusion to his left forearm, did not require immediate medical attention. (*Id.* at 30-31)

(citing Document 28-1 at 66-67, 70.) Moreover, the Magistrate Judge noted that it appears that

Plaintiff received timely medical treatment. (PF&R at 30.) Plaintiff and Inmate Wadkins indicate

that Plaintiff was struck by the medical cart between 11:00 and 11:30 a.m., and his medical records

indicate that he received treatment in Health Services at 11:32 a.m. (*Id.*) Based on the foregoing,

the Magistrate Judge concluded that Defendants did not act with deliberate indifference in failing

to stop and render aid to Plaintiff after he was struck with the medical cart. (*Id.* at 31.)

Second, the Magistrate Judge found that Defendants did not act with deliberate

indifference in providing medical treatment for Plaintiff's injury or in failing to order an MRI.

(PF&R at 31-32.) The Magistrate Judge reviewed Plaintiff's medical records and found that

medical staff "made sufficient efforts to treat [his] condition." (*Id.* at 31.) Medical staff evaluated

Plaintiff and provided treatment following each sick-call request and chronic care visit. (*Id.*) They

ordered x-rays and prescribed pain medications. (*Id.*) Medical staff determined that an MRI was

---

14  The Magistrate Judge briefly considered the merits of his claims that Defendants failed to render him aid and failed
to order an MRI even though Plaintiff did not fully exhaust his administrative remedies. (PF&R at 30.)

not warranted based upon Plaintiff's continuous, normal musculoskeletal and neurological examinations.[15] (*Id*.) To the extent that Plaintiff alleged that medical staff violated his Eighth Amendment rights by failing to order an MRI, the Magistrate Judge found that his claim is without merit because "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." (*Id*.) (quoting *Webb v. Hamidullah,* 281 F.App'x 159, 166 (4th Cir.2008)). Moreover, he recognized that "an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." (PF&R at 32) (quoting *Malcomb v. Raja,* 2010 WL 3812354, at *1-2 (S.D.W.Va. Sept. 22, 2010) (J. Copenhaver) (quoting *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977)). Based on a review of Plaintiff's medical history, the Magistrate Judge found that Defendants did not act with deliberate indifference in providing Plaintiff medical treatment or in failing to order an MRI. (PF&R at 32.) Accordingly, the Magistrate Judge recommended that the Court grant Defendant's First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (*Id*.)

### B.  Plaintiff's Objections and the Court's Findings

Based on a review of the record, the Court finds that Plaintiff's objections are without merit, and therefore, should be overruled.[16] The Court finds that most of Plaintiff's "objections" do not address any portion of the Magistrate Judge's findings or recommendation and/or are general and conclusory.[17] Therefore, the Court finds that it need not conduct a *de novo* review of

---

15  The Magistrate Judge noted that Plaintiff was examined by Dr. Edwards and PA Rose on numerous occasions, and each examination revealed that he had a full range of motion of his L-Spine and all extremities, equal strength in his bilateral extremities, and good sensation to light touch. (PF&R at 31.)

16  The Court notes that Plaintiff is acting *pro se*, and thus has accorded his pleadings liberal construction. *Estelle*, 429 U.S.at 106; *Loe*, 582 F.2d at 1295.

17  For example, Plaintiff states the following: (1) he has showed that "those responsible are sued in their individual

those "objections." *See* 28 U.S.C. § 636(b)(1)(C) (providing that objections must be to the "proposed findings and recommendations" of the Magistrate Judge); *Orpiano*, 687 F.2d at 47 (the Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations.")  The Court further finds that Plaintiff's objections that *do* address specific portions of the Magistrate Judge's findings and recommendation are without merit, and therefore, should be dismissed.

First, Plaintiff apparently objects to the Magistrate Judge's finding that the United States should be substituted in place of Defendants because they were acting within the scope of their employment at the time of the incident giving rise to Plaintiff's Complaint. (Document 46 at 8.) He challenges the Certification of the United States Attorney and questions "is running into pedestrians and eluding crime scene within scope of defendants' office?" (*Id.*) He contends that "whomever attorney general assistant was that perjured to certify defendants acted within scope of their duties – must produce such regulations specifically delegating immunity to hit and run over pedestrians – whether prisoners confined or civilians." (*Id.*)

The Court finds that Plaintiff's objection should be overruled. The FTCA "immunizes a federal employee from liability for his 'negligent or wrongful act[s] or omission[s] . . . while acting

---

capacities;" (2) he "objects and responsively rebuts Magistrates avoidances of the first amendment redress of grievances;" (3) "[t]he Magistrate is due to recuse and all finding reversed for an evidentiary hearing;" (4) "Defendants' motion to dismiss are not well taken – Plaintiff objects and the case is in controversy; the Magistrate bias cannot preside over these disputes;" (5) he "seeks these disputed controversy matters be presented to a Seventh Amendment Civil Jury;" (6)"[t]he Defendant's Motion to Dismiss Medical Negligence Claims should not be granted; it was medical staff that hit and run injuring Plaintiff – and because the suit involves medical providers – the medical negligence's amounts to retaliation for a protected litigation 1st Amendment Right;" and (7) Plaintiff also stresses that the "failure to render aide to hit and run victim is both federal felony and state felony" and questions "why aren't defendants incarcerated for reckless driving and leaving the scene of an accident with personal injury involved?" (Document 46 at 1-20.)

with the scope of his employment . . . .'" *Maron v. United States,* 126 F.3d 317, 321 (4th Cir.1997)

(quoting 28 U.S.C. § 2679(b)(1)). Title 28 U.S.C. Section 2679(d)(1), provides that:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). In the instant case, the United States attached such a certification,

which is "is conclusive unless challenged." *Gutierrez de Martinez v. Drug Enforcement Admin.,*

111 F.3d 1148, 1153 (4th Cir.1997); (Document 30-1.) Although Plaintiff did not challenge the

certification in his response in opposition, he does so now. (*See* Documents 26, 33, and 46 at 8.)

When a certification is challenged, it shifts "the burden to the plaintiff to prove, by a

preponderance of the evidence, that the defendant federal employee was acting outside the scope

of his employment." *Martinez,* 111 F.3d at 1153. The plaintiff must present "specific evidence or

the forecast of specific evidence that contradicts the Attorney General's certification decision, not

mere conclusory allegations and speculation." (*Id.* at 1155.)

    The Court finds that Plaintiff's allegation that the United States Attorney perjured himself

is conclusory, and his argument that Defendants were not acting within the scope of their

employment is without merit.   Plaintiff has not presented any "specific evidence" that contradicts

the Certification and has not shown, by a preponderance of the evidence, that Defendants were

acting outside the scope of their employment at the time of the incident. (*See id.* at 1153-55.)

Moreover, Plaintiff's argument is misguided. The question is not whether the incident, striking

Plaintiff with a medical cart, is a part of Defendants' job duties or within the scope of their

employment, but rather, whether a*t the time of the incident*, Defendants were acting within the scope of their employment. *See* 28 U.S.C. § 2679(d)(1). The Supreme Court of Appeals of West Virginia has explained that "[s]cope of employment" is a relative term and requires a consideration of surrounding circumstances, including the character of the employment, the nature of the wrongful deed, the time and place of its commission and the purpose of the act."[18] *Foodland v. West Virginia Department of Health and Human Resources,* 207 W.Va. 392, 532 S.E.2d 661, 665 (2000). In their Affidavits, Defendants explain that at the time of the incident they were "responding to a medical emergency" and driving a battery powered medical cart (an electric golf cart) which "is used by medical staff to respond to medical emergencies." (Document 28-1 at 86-91.) Based on the foregoing, the Court finds that Plaintiff's objection should be overruled.

Second, Plaintiff appears to object to the Magistrate Judge's finding that Plaintiff's claim that Defendants negligently hit him with the medical cart is insufficient to state a claim under the Eighth Amendment. (Document 46 at 9 and 11.)  Plaintiff claims that Defendants intentionally and maliciously struck him with the medical cart. (*Id.* at 9 and 12) ("it was 'intent' to cause injury . . . the actions by defendants was malicious."). He also argues that Defendants "admit they hit [him] and kept going – this constitutes a felony with deliberate indifference to a human pedestrian." (*Id.* at 11.)  He contends that "deliberate indifference may demonstrate by either actual intent or reckless disregard [and] defendants' overt acts were equal to intent and wanton negligences [sic] with callous disregard for human safety of pedestrians on the walk ways lawfully." (*Id.*at 18.) The Court notes that in his objections, Plaintiff has alleged for the first time

---

18 The Court applies the law of the state where the conduct occurred in determining whether a federal employee was acting within the scope of his or her employment. *Martinez,* 111 F.3d at 1156.

that Defendants intentionally struck him with the medical cart. In his Complaint, Amended Complaint and written submissions, Plaintiff has consistently alleged that Defendants negligently struck him with the medical cart.[19] "[Plaintiff] cannot use his objections to plead new claims or cure the factual defects of his existing claims against Defendant." *Martin v. Brackett*, 2012 WL 2501094 (D.S.C. June 28, 2012) *aff'd,* 485 Fed.Appx. 634 (4th Cir.2012) (citing 28 U.S.C. § 636(b)(1)(C) (providing that objections must be to the "proposed findings and recommendations" of the Magistrate Judge); Fed.R.Civ.P. 72(b)(2) (same). Therefore, these new allegations do not merit *de novo* review.

To the extent Plaintiff argues that Defendants' negligence in striking him with a medical cart and failing to render aid constitutes deliberate indifference, the Court finds that his objection should be overruled. To prevail on a claim under the Eighth Amendment, Plaintiff must show that Defendants were deliberately indifferent to his health and safety. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Mere negligence is insufficient to sustain such a claim. *See Parker v. Maryland,* 413 F.App'x. 634, 638 (4th Cir.2011). Deliberate indifference to a serious risk of harm also requires "more than ordinary lack of due care for the [plaintiff's] interests or safety." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). Here, as Plaintiff alleges in his Complaint and Amended

---

19 *See* (Compl. at 4) ("the actions all three employees can only be concluded as extreme negligence and total disregard for my health and safety because they kept going and did not to my knowledge even return to the scene of the accident after injuring me); (*id.* at 6) (describing Defendants' conduct as "reckless negligent"); (Document 26 at 1) ("Plaintiff was injured due to the wreckless [sic] and negligent driving by the Defendant Conley"); (Amend Compl. at 1) ("Plaintiff was personally injured due to the wreckless [sic] and negligent driving of Nurse Conley White while the Plaintiff was a pedestrian who had the right of way as a pedestrian by law"); (Document 33 at 1) ("The Plaintiff was injured by the Defendant Conley White who at the time of his reckless and negligent driving of a battery powered motor vehicle was accompanied by Janeen Rose and Frances Lilly"); (*id.* at 1-2) ("A pedestrian always has the right of way and although the Defendants claim that they were on the way to a medical emergency at the time they injured the Plaintiff, this negligence on the part of the Defendants by striking him with this vehicle does not negate the fact that they should be held accountable for their actions.")

Complaint, Defendants' actions, at best, constitute "negligence." (*See* Amend. Compl. at 1) ("Plaintiff was personally injured due to the wreckless [sic] and negligent driving of Nurse Conley White while the Plaintiff was a pedestrian who had the right of way as a pedestrian by law.") Moreover, Defendants did not act with deliberate indifference in failing to stop and render aid to Plaintiff. Defendants explain that the medical emergency they were responding to took priority over Plaintiff who had been "bumped" or "brushed" on the arm and did not appear to need assistance. (Document 28-1 at 86-91.)[20] Based upon the foregoing, the Court finds that Plaintiff's objections should be overruled.

Third, Plaintiff appears to object to the Magistrate Judge's finding that his *Bivens* claims, with respect to Defendants' failure to render him aid and failure to order an MRI, should be dismissed for failure to exhaust his administrative remedy. (Document 46 at 17.) Plaintiff argues that "the only issue that needed exhausting was the medical cart struck him and caused hit and run injury." (*Id.*) He asserts that "[t]hat administrative remedy has long ago been exhausted." (*Id.*) In the alternative, he argues that "because vehicle hit and run is felony – a complainant does not have to exhaust administrative remedies to recover for medical injury funding to repair damage inflicted." Plaintiff argues that the PLRA is unconstitutional as applied to him because it deprives him of his right to a jury trial. (*Id.* at 16.) He also asserts that "the PLRA should not apply to personal injury cases inflicted by 'wanton negligence' of defendants . . ." (*Id.*) The Court, again, finds that Plaintiff's objections should be overruled.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in

---

20  Although Plaintiff now alleges that he was knocked to the ground (Document 46 at 13, 19), he previously admitted that he was not knocked down (Document 28-1 at 53) which is supported by the affidavits submitted by both parties. (Document 28-1 at 86-91) (Compl. at 17-25.)

controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. "In an action under § 1983, the parties have a right to a jury trial on the merits, *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999), but this right does not guarantee resolution by a jury of all factual disputes." *Small v. Camden County,* 2013 WL 4504761 (3d.2013). The right to a jury trial depends upon "the nature of the issue . . . rather than the character of the overall action." *Ross v. Bernhard,* 396 U.S. 531, 538 (1970); *see Dillon v. Rogers,* 596 F.3d 260, 271–72 (5th Cir.2010). The exhaustion requirement of the PLRA is a precondition to bring suits under § 1983. "[A]s such, just as subject-matter jurisdiction, personal jurisdiction, and venue, exhaustion is a "threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." *Small,* 2013 WL 4504761, at *3 (quoting *Dillon,* 596 F.3d at 272 (emphasis added)). "Matters of judicial administration often require judges to decide factual disputes and the Seventh Amendment is not implicated as long as the facts are not bound up with the merits of the underlying dispute." (*Id.* at *4) (citing *Messa,* 652 F.3d at 310 ("The Seventh Amendment does not promise a jury trial on all issues that might, as a practical matter, finally dispose of a case.   Rather, it guarantees the right to a jury's resolution of the merits of the ultimate dispute." ) (citing *Markman v. Westview Instruments,* 517 U.S. 370, 377 (1996); *In re Peterson,* 253 U.S. 300, 309–10 (1920))). Plaintiff's does not allege that the facts relating to his failure to exhaust are intertwined with the merits of his case. Whether Defendants were negligent in hitting him with a medical cart has yet to be determined. Although the Fourth Circuit Court of Appeals has not ruled on this issue, the Second, Third, Fifth, Seventh, Ninth, and Eleventh Circuits have held that a plaintiff in a lawsuit governed by the PLRA is not entitled to a

jury trial on the issue of exhaustion. *See Messa v. Goord,* 652 F.3d 305, 308–09 (2d Cir.2011); *Dillon v. Rogers,* 596 F.3d 260, 272 (5th Cir.2010); *Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir.2008); *Bryant v. Rich,* 530 F.3d 1368, 1373–77 (11th Cir.2008); *Wyatt v. Terhune,* 315 F.3d 1108, 1119–20 (9th Cir.2003); *Small v. Camden County,* 2013 WL 4504761 (3d Cir.2013). Based on the foregoing, the Court finds that Plaintiff's objection should be overruled.

The Court finds that the PLRA applies because Plaintiff has filed a *Bivens* action about prison life alleging that Defendants wrongfully struck him with a medical cart, failed to render aid, and failed to order an MRI. A *Bivens* action, like an action under 42 U.S.C. § 1983, is subject to the PLRA's exhaustion requirement. *See Porter v. Nussle,* 534 U.S. 516, 524 (2002). The Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." (*Id.* at 516) (finding that the PLRA applied to inmate's suit against the corrections officers who allegedly "placed him against a wall and struck him with their hands, kneed him in the back, [and] pulled his hair.")   Based upon the content of Plaintiff's *Bivens* action, the Court finds that the PLRA applies.   His objection should be overruled.

The Court further finds that Plaintiff has alleged three separate *Bivens* claims, and therefore, under the PLRA, must properly exhaust his available administrative remedies with respect to each of the those claims. The PLRA's exhaustion requirement is mandatory, *Booth v. Churner,* 532 U.S. 731, 741 (2001), and requires "proper exhaustion." *Woodford v. Ngo,* 548 U.S. 81, 94 (2006). When a "prisoner has failed to exhaust some, but not all, of the claims asserted in

the complaint," the court should dispose of the unexhausted claims, but should "proceed with the exhausted claims." *Jones v. Bock,* 549 U.S. 199, 219-20 (2007)). Although Plaintiff fully exhausted his administrative remedies with respect to his claim that a medical cart struck him and injured his arm, he did not do so with respect to his claims that Defendants failed to stop and render aid and failed to order an MRI. (Document 28-1.)   Plaintiff appears to acknowledge that he did not exhaust his administrative remedies with respect to these claims. (*See* Document 46 at 17.) The record reveals that Plaintiff did not file an administrative remedy request concerning his need for an MRI.   The record also reveals that Plaintiff did not complete the administrative remedy process with respect to his claim that Defendants failed to render him aid. The first time Plaintiff raised this issue was in his Central Office Administrative Remedy Appeal. (Document 28-1 at 84.) "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford,* 548 U.S. at 90.   Because Plaintiff did not assert his claim regarding staff's failure to stop and render him aid after hitting him with a medical cart at all levels of the administrative remedy process, pursuant to the BOP's grievance procedure, the Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.,* he did not fully or properly exhaust his available remedies. Accordingly, Plaintiff's objection is overruled.

Finally, Plaintiff objects to the Magistrate Judge's finding that expert testimony is necessary pursuant to the MPLA with respect to his FTCA claim. (Document 46 at 13.) Plaintiff argues that "a victim of hit and run – that needs no expert testimony." (*Id.*) The Court finds that Plaintiff's objection is without merit and should be overruled. Plaintiff alleges that Defendants acted with negligence in failing to timely treat his injuries and in failing to order an MRI. He

further alleges that medical staff provided untimely and inadequate treatment resulting in "neurological or nerve damage." (Document 27 at 3-4.) Under the MPLA, a plaintiff may be excused from providing a screening certificate of merit if "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." W.Va. Code § 55-7B-6(c). As noted above, under West Virginia law, "[i]t is the general rule in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Sly Pt. 2 *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964). Although the nature of a hit and run is within the understanding of a lay juror, the resulting injury, neurological or nerve damage, and whether the treatment medical staff provided fell below the applicable standard of care, requires expert testimony. Therefore, this objection should be overruled.

## *CONCLUSION*

After careful consideration and for good cause shown, the Court **ORDERS** that Plaintiff's "Objections and Traverse(s)" (Document 48), which the Court construes as a Motion for Reconsideration, be **GRANTED only** to the extent that the Court has substantively reviewed his timely objections and arguments (Document 46), and **DENIED** to the extent that the motion asks the Court to alter its prior ruling.  Based on the findings herein, the Court **ORDERS** that Plaintiff's objections to the PF&R (Document 46) be **OVERRULED.** Accordingly, the Court **REAFFIRMS** its February 11, 2013 Memorandum Opinion and Order (Document 47) adopting the Magistrate's Proposed Findings and Recommendation: (1) granting the United States' First

Amended Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States (Document 30); (2) denying as moot the United States' Motion to Dismiss Defendants Conley White, Janeen Rose and Frances Lilly and Substitute the United States (Document 16); (3) granting the United States' Motion to Dismiss Medical Negligence Claims for Failure to State a Claim (Document 18); and (4) granting the Defendants' First Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 28); (5) denying as moot the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 23); and (6) referring this matter back to Magistrate Judge VanDervort for further proceedings regarding the Plaintiff's FTCA claim.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:          October 15, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA